UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-60286-Civ-COOKE/HUNT

KATHLEEN O. KING,

    Plaintiff,

vs.

MCINTOSH SAWRAN &
CARTAYA, P.A.,

    Defendant.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before me on Plaintiff's Motion for Partial Summary Judgment (ECF No. 112) and Defendant's Motion for Summary Judgment (ECF No. 113). Both Motions are fully briefed and ripe for review. For the reasons set forth herein, both Motions are denied in their entirety.

## I. BACKGROUND

Plaintiff Kathleen O. King brings this action against Defendant McIntosh Sawran & Cartaya, P.A., under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 ("FMLA" or "the Act"). Plaintiff, an attorney and former employee of Defendant, took leave from the firm in December 2017 in order to care for her ailing father. *Pl.'s Mot. for Summ. J.*, ECF No. 112, at p. 1. Plaintiff alleges that Defendant violated her FMLA rights by requiring her to continue working, and then by firing her, while she was on leave. *Id.* Defendant responds that Plaintiff was "provided with all of the leave she asked for." *Def.'s Mot. for Summ. J.*, ECF No. 113, at p. 6. Defendant argues that it fired Plaintiff not because she went on leave, but because the firm had lost its biggest client. *Id.* It claims that the loss of the client necessitated cuts in the firm's payroll and, at the same time, eliminated much of Plaintiff's workload. *Id.* Defendant also appears to blame Plaintiff for losing the client, based on a distasteful comment she purportedly made in a meeting with the client some months before its departure. *Id.* at p. 2, 9.

Plaintiff moves for summary judgment on count one of the Complaint, which alleges interference with her FMLA rights. *Pl.'s Mot. for Summ. J.*, ECF No. 112, at p. 9. Plaintiff also asks for summary judgment on what she characterizes as "Defendant's First, Second and Third Affirmative Defenses," which are listed in Defendant's Answer to the Complaint. *Id.* at p. 12. Defendant, meanwhile, moves for summary judgment against Plaintiff on both counts of the Complaint—Plaintiff's interference claim as well as her retaliation claim. *Def.'s Mot. for Summ. J.*, ECF No. 113, at p. 1.

## II. LEGAL STANDARDS

### A. Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B. The Family and Medical Leave Act

"[T]he FMLA entitles eligible employees to take up to twelve weeks of leave in one year for various specified reasons, including the 'serious health condition' of the employee's parent." *Diamond v. Hospice of Fla. Keys, Inc.*, 677 F. App'x 586, 592 (11th Cir. 2017) (quoting 29 U.S.C. § 2612(a)(1)(C)). The FMLA prohibits employers both from interfering with employees' rights under the FMLA (interference claims) and from retaliating against employees for exercising their rights under the FMLA (retaliation claims)." *Diamond*, 677 F. App'x at 592 (citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001); 29 C.F.R. § 825.220(c)).

**C. FMLA Interference Claims**

To prove interference with her FMLA rights, a plaintiff "must demonstrate only that she was 'denied a benefit to which [s]he was entitled under the FMLA.'" *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 241 (11th Cir. 2010) (quoting *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1266–67 (11th Cir. 2008)). "Benefits under the FMLA include both taking leave and being reinstated following a leave period, subject to certain conditions." *Diamond*, 677 F. App'x at 592. In determining whether an employee was denied such benefits, "[t]he intent of the employer is not relevant." *Id.* (citing *Martin*, 543 F.3d at 1267).

The right to take FMLA leave is not necessarily the right to be completely "left alone" by one's employer. *Smith-Schrenk v. Genon Energy Servs., LLC*, 2015 WL 150727, at *9 (S.D. Tex. Jan. 12, 2015) (quoting *O'Donnell v. Passport Health Commc'ns, Inc.*, 561 F. App'x 212, 218 (3d Cir. 2014)). On the other hand, "[t]he ability to take FMLA leave is not conditioned upon the willingness of the employee to remain 'on call' to the employer.'" *Smith-Schrenk*, 2015 WL 150727, at *9 (quoting *Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 70–71 (D. Mass. 2000)). "The general consensus among courts is that reasonable contact limited to inquiries about the location of files or passing along institutional or status knowledge will not interfere with an employee's FMLA rights; however, asking or requiring an employee to perform work while on leave can constitute interference." *Smith-Schrenk*, 2015 WL 150727, at *9 (collecting cases).

Similarly, the right to reinstatement under the FMLA is "not absolute; rather, 'an employer can deny reinstatement if it can demonstrate that it would have discharged the employee had [s]he not been on FMLA leave.'" *Schaaf*, 602 F.3d at 1241 (11th Cir. 2010) (quoting *Martin*, 543 F.3d at 1267). "[I]f an employee is not reinstated, the employer bears the burden of proving that the employee was discharged for independent reasons that were unrelated to the employee's leave." *Schaaf*, 602 F.3d at 1241. Thus, while "[t]he employer's intent or motives are irrelevant to the [interference] analysis, . . . the plaintiff's request must have been the proximate cause of the termination." *Vira v. Crowley Liner Servs., Inc.*, 723 F. App'x 888, 895 (11th Cir. 2018).

Finally, "[i]n addition to showing interference, a plaintiff must show that she has been prejudiced by the FMLA violation in some way." *Diamond*, 677 F. App'x at 592 (citing *Evans v. Books-a-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014)). "That means that a plaintiff must

'demonstrate some harm remediable by either "damages" or "equitable relief,"' the two distinct categories of remedies provided for by the FMLA." *Diamond*, 677 F. App'x at 592 (quoting *Evans*, 762 F.3d at 1296).

### D. Retaliation Claims

"To prove FMLA retaliation, the plaintiff must show that her employer intentionally discriminated against her for having exercised an FMLA right." *Diamond*, 677 F. App'x at 594. "In other words, the plaintiff must show that her 'employer's actions were motivated by an impermissible retaliatory or discriminatory animus.'" *Id.* (quoting *Martin*, 543 F.3d at 1267–68). "An employee may prove an FMLA retaliation claim through either direct or circumstantial evidence." *Diamond*, 677 F. App'x at 594. "In the absence of direct evidence of retaliation, [courts] apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." *Id.* at 595 (citing 411 U.S. 792 (1973)).

"Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of retaliation, which consists of three elements: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Diamond*, 677 F. App'x at 595 (citing *Martin*, 543 F.3d at 1268). With respect to the third element, "at the prima facie stage, '[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Benz v. Crowley Mar. Corp.*, 732 F. App'x 794, 801 (11th Cir. 2018) (quoting *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)).

"If the plaintiff makes out her prima facie case, the burden shifts to the employer to articulate a legitimate reason for the adverse action." *Diamond*, 677 F. App'x at 595 (citing *Martin*, 543 F.3d at 1268). "If the employer does so, the plaintiff must come forward with evidence sufficient for a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse action." *Diamond*, 677 F. App'x at 595 (citing *Hurlbert*, 439 F.3d at 1297–98).

## III. DISCUSSION

### A. Plaintiff's Interference Claim Based on Work-Related Contacts

In count one of the Complaint, Plaintiff alleges that Defendant "interfered with [her] exercise of her FMLA rights" by "disturb[ing]" her during her leave with numerous "work-related questions or requests." *Compl.*, ECF No. 1, at ¶¶ 23, 32. These requests included an "instruction . . . to draft exit memos for all cases related to" the firm's recently lost client; a request for "details related to an upcoming deposition"; and various "emails and telephone calls . . . involving work-related matters." *Id.* at ¶ 23.

The record here offers support to Plaintiff's contention that "[t]he work culture at Defendant's law firm was one [in which] attorneys were expected to be available 24/7 no matter the circumstance," even if they were "out of the state caring for seriously ill family members." *Pl.'s Resp. in Opp'n*, ECF No. 142, at p. 5. Just two days into her FMLA-protected leave, Plaintiff's supervising partner wrote her an email demanding that she draft "EXIT Memo[s]" on each of the cases she was assigned to for the lost client—cases that comprised the bulk of Plaintiff's portfolio. *Pl.'s Ex. K*, ECF No. 129-12, at p. 1.

The next day, the partner emailed his colleagues complaining that Plaintiff had not responded. *Pl.'s Ex. L*, ECF No. 129-13, at p. 1. "I had to call [her] twice," he wrote, "and finally got a call back from her." *Id.* The partner continued:

> She said her father is doing better, but she will not be returning from VA until Tuesday next week. I then asked her if she had her laptop with her so that she could work remotely, and she said no, because she left in a hurry and forgot it. I tried to impress upon her the urgency of having status memos done and all reporting completed on the files assigned to her, to which she was not entirely receptive.

*Id.*

Three days later, the same partner contacted Plaintiff again, asking, "Did you get my earlier email re: EXIT MEMOs? When are you back in the office?" *Pl.'s Ex. E*, ECF No. 129-6, at p. 2. Plaintiff promptly replied, explaining that she "needed to be [in Virginia] for [her] father[']s surgery today." *Id.* at p. 3. Plaintiff also called into the office and "dictated a chart to her assistant to enable her assistant to draft the exit memos that [the partner had] repeatedly demanded." *Pl.'s Resp. in Opp'n*, ECF No. 142, at p. 5.

Meanwhile, the partner forwarded Plaintiff's email to his colleagues, commenting that he "underst[ood] family emergencies" but Plaintiff was "not doing much legal work[.]"

*Pl.'s Ex. E*, ECF No. 129-6, at p. 2. That same day, another staff member emailed Plaintiff "remind[ing]" her that the firm also "need[ed]" her to complete a self-evaluation. *Pl.'s Ex. F*, ECF No. 129-7, at p. 2. And the next day, Plaintiff's supervising partner contacted her once again about a deposition that had to be canceled, a circumstance that he evidently blamed on her. *Pl.'s Stmt. of Facts*, ECF No. 129-1, at ¶ 44. All of this, incidentally, occurred after the firm had already decided to fire Plaintiff. *Id.* at ¶ 50.

In light of the above facts, neither Party is entitled to summary judgment on this part of Plaintiff's claim. Defendant's conduct in this case falls remarkably close to the dividing line recognized by the "[t]he general consensus among courts." *Smith-Schrenk*, 2015 WL 150727, at *9. On the one hand, viewed in the light most favorable to Defendant, its conduct could be characterized as mere requests that Plaintiff "pass[] along institutional or status knowledge," or that she "provid[e] closure on completed assignments." *Id.* Also consistent with such a finding is the fact that Plaintiff apparently did little more, in the way of concrete work, than "dictate[] a chart to her assistant to enable her assistant to draft the [requested] exit memos." *Pl.'s Resp. in Opp'n*, ECF No. 142, at p. 5; *cf., e.g., Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 910–12 (E.D. Mich. 2007) (rejecting attorney's FMLA interference claim where her law firm requested that she review documents and answer "work-related questions" while on leave, but she did not ultimately "conduct any work"). Moreover, given the ongoing crisis of the firm losing its, and Plaintiff's, most important client, Plaintiff's need to "field[] occasional calls" about the crisis could be viewed simply as "a professional courtesy." *Smith-Schrenk*, 2015 WL 150727, at *9.

"On the other hand, . . . '[t]he ability to take FMLA leave is not conditioned upon the willingness of the employee to remain 'on call' to the employer. Of the many prerequisites to FMLA leave, the convenience of the employer is not one.'" *Id.* (quoting *Sherman*, 113 F. Supp. 2d at 70–71). Here, the multiple emails and phone calls outlined above could be found to be more than "de minimis contacts." *Smith-Schrenk*, 2015 WL 150727, at *9 (quoting *O'Donnell*, 561 F. App'x at 218). A reasonable jury could find that by "impress[ing] upon her the urgency" of drafting "EXIT MEMOs" on all of the lost client's cases—in other words, the majority of Plaintiff's caseload—Defendant was "essentially requiring Plaintiff to work while on leave." *Smith-Schrenk*, 2015 WL 150727, at *9 (quoting *Sherman*, 113 F. Supp. 2d at 70–71). Indeed, Plaintiff's supervising partner said as much himself, stating that he had

explicitly asked Plaintiff to "work remotely." *Pl.'s Ex. L*, ECF No. 129-13, at p. 1. Finally, the Court must reject those arguments in Defendant's Motion that are based on Defendant's own interpretation of the record. *See, e.g.*, *Def.'s Mot. for Summ. J.*, ECF No. 113, at p. 6 (arguing that Plaintiff "demonstrated by her own actions that she worked remotely at her own prompting, and read and answered emails without any apparent interference with her leave to care for her father"). Such arguments form an improper basis for summary judgment, which can only be granted after the Court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party[.]" *Feliciano*, 707 F.3d at 1247 (quoting *Skop*, 485 F.3d at 1143).

In sum, neither Party has "show[n] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Vira*, 723 F. App'x at 892. The Parties' respective motions for summary judgment on this aspect of Plaintiff's claim must both be denied.

### B. Plaintiff's Interference Claim Based on Failure to Reinstate

Plaintiff further alleges that Defendant interfered with her FMLA rights on the theory that the firm did not "restore[ her] to her position following the end of her protected leave." *Pl.'s Mot. for Summ. J.*, ECF No. 112, at p. 11. The Parties' respective motions for summary judgment on this point center around whether Defendant "would have terminated Plaintiff even if she had not taken protected leave." *Pl.'s Resp. in Opp'n*, ECF No. 142, at p. 11; *see also Def.'s Resp. in Opp'n*, ECF No. 140, at p. 3 ("[T]he undisputed evidence shows that Defendant would have laid off [Plaintiff] regardless of her taking leave.").[1]

Under the FMLA, "th[e] reinstatement right is not absolute; rather, 'an employer can deny reinstatement if it can demonstrate that it would have discharged the employee had [s]he not been on FMLA leave.'" *Schaaf*, 602 F.3d at 1241 (quoting *Martin*, 543 F.3d at 1267). "[I]f an employee is not reinstated, the employer bears the burden of proving that the

---

[1] Defendant also appears to argue that Plaintiff was not fired at all during her leave, and that she "was reinstated to her position when she returned." *Def.'s Mot. for Summ. J.*, ECF No. 113, at p. 6. This argument is impossible to square with the record. On December 21, 2017, during Plaintiff's leave, her supervising partner "candidly told her" over the phone that she had no "future with the firm." *Dep. of James Sawran*, ECF No. 106, at p. 189–91. Plaintiff's "official[]" last day at the firm was December 29, just days after she returned. *Id.* at p. 261.

employee was discharged for independent reasons that were unrelated to the employee's leave." *Schaaf*, 602 F.3d at 1241; *see also Vira*, 723 F. App'x at 895 ("[T]he plaintiff's request must have been the proximate cause of the termination.").

As set forth more fully below, Defendant's reasons for terminating Plaintiff are hotly contested here, and there is evidence in the record to support both Parties' contentions. *See infra* Part III(D). Neither Party has established whether, as a matter of law, Plaintiff's FMLA leave was the proximate cause of her termination, and both Parties' motions for summary judgment on this issue must therefore be denied.

### C. Defendant's "Affirmative Defenses"

Plaintiff also moves for summary judgment on what she characterizes as Defendant's "First, Second and Third Affirmative Defenses." *Pl.'s Mot. for Summ. J.*, ECF No. 112, at p. 12. Those defenses, listed in Defendant's Answer, are: 1) that Plaintiff "fails to state a claim upon which relief may be granted" because she "cannot demonstrate that Defendant interfered with any rights under the Act or retaliated against her"; 2) that Plaintiff "fails to state a claim upon which relief may be granted" because she "received any and all leave to which she may have been entitled"; and 3) that Plaintiff "cannot demonstrate a causal connection between any adverse employment action and any activity protected under the FMLA." *Def.'s Answer & Affirmative Defenses*, ECF No. 23, at p. 4.

Plaintiff's request must be rejected. As an initial matter, notwithstanding the label of Defendant's filing, these are not affirmative defenses. "An affirmative defense raises matters extraneous to the plaintiff's prima facie case," and "[t]he party asserting an affirmative defense usually has the burden of proving it." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (internal quotation marks and citation omitted). By contrast, a defense that merely "points out a defect in the plaintiff's prima facie case," or "negate[s] an element" thereof, "is not an affirmative defense." *Id.* Such a defense is "rather . . . a general defense akin to a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim[.]" *Id.* at 1349 n.9. Here, Defendant's Answer explicitly asserted that the Complaint "fails to state a claim upon which relief may be granted" because Plaintiff "cannot demonstrate" certain elements of her claim. *Def.'s Answer & Affirmative Defenses*, ECF No. 23, at p. 4.

Furthermore, it is not even clear what Plaintiff is asking for. "Facial challenges to the legal sufficiency of a claim . . . such as a motion to dismiss based on failure to state a claim

for relief . . . always present[] a *purely legal* question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (emphasis added). For obvious reasons, such challenges hardly lend themselves to summary judgment analysis. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial" (internal quotation marks and citation omitted)).

Another District Court, addressing a similar motion for summary judgment, summed up the problem well. "In order to grant summary judgment regarding this defense, th[e] Court would have to find that there is no genuine issue of material fact regarding whether or not Plaintiff has properly alleged a viable civil claim." *Ogden v. Pub. Util. Dist. No. 2 of Grant Cty.*, 2016 WL 589870, at *2 (E.D. Wash. Feb. 11, 2016). Moreover, "the Court does not see what Plaintiff would gain if this Court granted the relief she requests":

> Defendant has not filed a separate 12(b)(6) motion to dismiss the case for a failure to state a claim. For Plaintiff to prevail on any of her claims, she must sufficiently establish the applicable elements, so striking Defendant's assertion that Plaintiff has failed to state a claim from its Answer would do nothing to change the way this case progresses.

*Id.* at *3.

To the extent that Plaintiff seeks summary judgment in her favor on the substance of her claims, or seeks to avoid summary judgment against her, the remainder of her briefing on the Parties' cross motions has amply served that purpose. To the extent, however, that Plaintiff seeks summary judgment on the "purely legal" question of whether her Complaint stated a claim, that request must be denied.

### D. Plaintiff's Retaliation Claim

Finally, Defendant moves for summary judgment against Plaintiff on count two of the Complaint, which alleges FMLA retaliation. *Def.'s Mot. for Summ. J.*, ECF No. 113, at p. 1. In response, Plaintiff appears to concede that there is no direct evidence of discriminatory intent in this case, and that the Court must therefore apply the *McDonnell Douglas* framework. *See, e.g.*, *Pl.'s Resp. in Opp'n*, ECF No. 142, at pp. 11–12 (arguing that Plaintiff "satisf[ied] her prima facie case" and that "Defendant's alleged non-retaliatory reason for her termination is pretextual"). Meanwhile, Defendant appears to concede that Plaintiff has satisfied the first

two elements of her prima facie case, arguing only that she has not established the third element, causation. *See Def.'s Mot. for Summ. J.*, ECF No. 113, at pp. 8–9. On that point, however, Plaintiff is correct. Because Plaintiff "was fired while on leave, there is simply no gap of time" between her FMLA-protected conduct and the adverse employment action. *Pl.'s Reply in Supp.*, ECF No. 148, at p. 7. As such, "the timing between the two events suggests a causal relationship sufficient to establish a prima facie case of FMLA retaliation." *Vira*, 723 F. App'x at 893; *see also, e.g.*, *Martin*, 543 F.3d at 1268 (the fact that a plaintiff "was terminated while on FMLA leave . . . is more than sufficient to create a genuine issue of material fact of causal connection").

Because Plaintiff has made out her prima facie case, the burden shifts to Defendant "to articulate a legitimate reason" for her termination. *Diamond*, 677 F. App'x at 595 (citing *Martin*, 543 F.3d at 1268). This "burden of rebuttal is exceedingly light," and Defendant has met it. *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it can involve no credibility assessment." (internal quotation marks and citation omitted)). Specifically, Defendant states that "its decision to lay [Plaintiff] off" was based on "the loss of a major client and resulting need to cut costs; the proportion of [Plaintiff's] work for that client and the lack of work to replace it; and [Plaintiff's] role in the loss of that client." *Def.'s Mot. for Summ. J.*, ECF No. 113, at p. 9.

Accordingly, "[t]he burden then shifts back" to Plaintiff to show that Defendant's "proffered reason was not its true reason"—in other words, "to demonstrate pretext." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). On this point, the record contains evidence in support of both Parties' positions. For example, the record contains some seemingly impartial, contemporaneous statements by the firm's leadership, to the effect that the loss of their biggest client required Defendant "to eliminate other positions as well," not only Plaintiff's. *Pl.'s Ex. C*, ECF No. 129-4, at p. 1.

However, there is also evidence to support a finding of pretext. For one thing, the timing of events—which, as noted, is as strong as it could be for Plaintiff—can itself be used to demonstrate pretext. *See, e.g.*, *Martin*, 543 F.3d at 1268 (in showing pretext, plaintiff "may rely on evidence that [s]he already produced to establish h[er] prima facie case," including "the close temporal proximity" between her taking leave and being fired). But there is even

more direct evidence than that in the record. For example, one day after Plaintiff went on leave to care for her sick parent, her supervising partner commented that her absence "makes our decision [to fire her] easy . . . . If she can't find an hour to call in for a partners['] meeting, I don't think we need her." *Pl.'s Ex. H*, ECF No. 129-9, at p. 3. Both of the other named partners at the firm replied in agreement. *Id.* at pp. 1–3. One of the partners even "suggest[ed]" that they bolster the case for firing Plaintiff by "document[ing]" her personnel file to reflect her alleged gaffe in the client meeting months earlier. *Id.* at pp. 1–3.

In short, there is evidence in the record to sustain a finding that Defendant's proffered reason for firing Plaintiff was not its "true reason." Defendant's motion for summary judgment on count two of the Complaint must therefore be denied.

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 112) and Defendant's Motion for Summary Judgment (ECF No. 113) are both **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 27th day of November 2018.

*[signature: Marcia G. Cooke]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Patrick M. Hunt, U.S. Magistrate Judge*
*Counsel of record*